**IN THE COURT OF APPEALS OF IOWA**

No. 20-1660
Filed April 14, 2021

**IN THE INTEREST OF A.H.,**
**Minor Child,**

**M.P., Mother,**
    Appellant,

**C.F., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District

Associate Judge.


Parents separately appeal the termination of their parental rights to their

child. **AFFIRMED ON BOTH APPEALS.**


Cole J. Mayer of Macro & Kozlowski, L.L.P., West Des Moines, for appellant

mother.

Andrea B. McGinn of the Law Shop by Skogerson McGinn LLC, Van Meter,

for appellant father.

Thomas J. Miller, Attorney General, and Natalie Deerr, Assistant Attorney

General, for appellee State.

Nancy L. Pietz, Des Moines, attorney and guardian ad litem for minor child.


Considered by Bower, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Parents separately appeal the termination of their parental rights to their child, born in 2019, pursuant to Iowa Code section 232.116(1)(h) (2020). Both parents challenge the sufficiency of evidence supporting the ground for termination, argue termination is contrary to the child's best interests, and assert the court erred in not allowing them additional time to work toward reunification. The mother also claims the State failed to make reasonable efforts at reunification relative to her special needs.

## I.     Background

The mother is the subject of a guardianship; has a history of prostitution; and suffers from various mental-health issues, including diagnoses of post-traumatic stress disorder, attention deficit hyperactivity disorder, and oppositional defiant disorder. The father is a registered sex offender[1] and has a history of mental-health issues of his own, including diagnoses of bipolar disorder, dissociative identity disorder, and schizophrenia. The family came to the attention of the Iowa Department of Human Services (DHS) in July 2019, when the child tested positive for methamphetamine at birth, seven weeks premature. The child remained in the hospital for roughly six weeks. The mother reported the positive test resulted from a former friend spiking her drink. The father had absconded from Missouri in early 2019. He was arrested in Iowa in July prior to the child's birth but was released in August when Missouri declined to extradite him. The parents were essentially homeless and unable to care for the child. In September,

---

[1] The record discloses the father was previously convicted of first-degree child molestation in Missouri.

around the time the child was discharged from the hospital, the parents stipulated to temporary removal and the State filed a child-in-need-of-assistance (CINA) petition. Shortly thereafter, the father was arrested for failing to register as a sex offender in Iowa. He was in and out of jail during the remainder of the proceedings as a result of his failure to comply with registry requirements.

A contested removal and adjudication hearing was held in November, after which the court entered a CINA adjudication and ordered continued removal. The mother underwent a substance-abuse evaluation shortly after the hearing. No treatment was recommended. A dispositional hearing was held in January 2020, after which the court ordered continued removal. The mother had previously been recommended to attend biweekly mental-health treatment. She only attended three appointments between late October 2019 and early January 2020. However, her attendance became more consistent beginning in March, when her appointments were done over the phone due to the COVID-19 pandemic.

By May, DHS recommended the permanency goal be modified to termination of parental rights. The State filed its termination petition in July. Throughout the proceedings, the parents remained essentially homeless. By the time of the termination hearing in August, they had been living in a motel for roughly three months. Seven other registered sex offenders also live at the motel. The DHS worker opined the mother's low level of cognitive functioning severely impacts her ability to provide safe parenting to the child. While the mother participated in mental-health therapy, her therapist opined she demonstrated no progress in controlling impulsive behaviors, recognizing negative consequences of her actions, and being proactive to meet her own needs. And the evidence shows the

mother's impulsivity led her to placing herself in a number of dangerous situations during the proceedings. The DHS worker testified visitation could not progress beyond semi-supervised due to the parents' failure to adequately address their mental-health issues. Instances of domestic violence between the parents also began to occur shortly before the termination hearing. By the time of the termination hearing, the father was in compliance with his probation requirements and had recently obtained a mental-health evaluation. While no treatment was recommended, the DHS worker was skeptical of the father's honesty with the evaluator about his mental-health and criminal histories, given the father's diagnoses and molestation conviction. The mother was about to give birth to another child she conceived with a man other than the father. Yet the parents remained in a relationship and planned to marry in the near future.

Ultimately, the juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(h). The father filed a motion to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). The court filed a modified termination order but still terminated both parents' rights. The parents appeal.

## II.    Standard of Review

Appellate review of orders terminating parental rights is de novo. *In re A.B.*, ___ N.W.2d ___, ___, 2021 WL 935436, at *5 (Iowa 2021); *In re C.Z.*, ___ N.W.2d ___, ___, 2021 WL 934999, at *5 (Iowa 2021). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

**III.    Analysis**

    A.    Mother

        1.    *Reasonable efforts*

We begin with the mother's reasonable-efforts challenge.  She claims the State failed to make reasonable efforts at reunification relative to her special needs.  The mother claims she preserved this claim by raising it in her written closing argument following the termination hearing.  Raising the issue at that juncture was too late to preserve error, so we do not address it.  *See, e.g.*, *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) ("[W]e will not review a reasonable efforts claim unless it is raised prior to the termination hearing." (citation omitted)).

        2.    *Sufficiency of evidence*

The mother challenges the sufficiency of the evidence supporting the statutory ground for termination.  As to the ground cited by the juvenile court, the mother only challenges the State's establishment of the final element—that the child could not be returned to her care at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the child cannot be returned to parental custody at the present time); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

While we commend the mother for participating in mental-health therapy, said participation did not alleviate the negative effect the mother's mental-health issues have on her ability to provide safe parenting.  We agree with the juvenile court; the child could not be returned to the mother's care at the time of the

termination hearing and section 232.116(1)(h) was proved by clear and convincing evidence.

### 3. Best interests

We turn to the mother's best-interests challenge. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

As noted, the defining elements of a child's best interests are safety and need for a permanent home. *H.S.*, 805 N.W.2d at 748. The child has been removed from the mother's care essentially her entire life. The mother never progressed beyond fully-supervised visitation and was never able to demonstrate an ability to provide safe parenting. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). We conclude the mother has been given ample time to get her affairs in order and this child's best interests are best served by providing permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). We conclude termination of the mother's rights is in the child's best interests.

### 4. Additional time

Finally, the mother requests an additional six months to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that a child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

We are unable to conclude the factors enumerated by the mother—namely continuing therapy and medication management—will alleviate the need for removal within six months. The mother has already participated in those services, and her ability to provide safe parenting has not improved. Because we are unable to conclude "the need for removal . . . will no longer exist at the end of the additional six-month period," we deny the mother's request for an additional time. *See id.* § 232.104(2)(b).

### B. Father

### 1. Sufficiency of evidence

The father also challenges the State's establishment of the final element of section 232.116(1)(h)—that the child could not be returned to his care at the time of the termination hearing. *See id.* § 232.116(1)(h)(4); *D.W.*, 791 N.W.2d at 707. While we commend the father for obtaining housing and employment, participating in parenting classes, and being consistent in attending visits while not incarcerated, other concerns remain. First, the parents remain in a relationship

and intend to marry soon. The mother's inability to provide safe parenting is problematic and, by extension, so is the father's refusal to acknowledge safety concerns stemming from the mother's intellectual disabilities. And we, like DHS, are skeptical of the father's lack of need for mental-health services. Also, the mother was due to give birth soon. While the father is not the biological father of this child, he testified to his intent to serve as the child's father. We are unable to conclude the parents could provide a safe home for one child, let alone two. Lastly, instances of domestic violence between the parents began to rear their head shortly before the termination as a result of the father's anger over the mother's relations with other men. *See In re J.R.*, No. 17-0556, 2017 WL 2684405, at *3 (Iowa Ct. App. June 21, 2017) ("The threat to children posed by domestic violence in their home may serve as the basis for terminating parental rights. Our case law has recognized: 'Children raised in homes touched by domestic abuse are often left with deep scars, revealed in the form of increased anxiety, insecurity, and a greater likelihood for later problems in interpersonal relationships.' In addition, 'domestic abuse places children at a greater risk of being physically abused.'" (internal citations omitted)).

We agree with the juvenile court that the child could not be returned to the father's care at the time of the termination hearing and section 232.116(1)(h) was proven by clear and convincing evidence.

### 2. Best Interests

The father also argues termination is contrary to the child's best interests. As noted, in determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for

furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We conclude termination of the father's parental rights is in the child's best interests for the same reasons termination of the mother's rights is in the child's best interests.

### 3. Additional time

The father only argues he "believes the court should have granted the parents an additional six months to work toward reunification because they had made significant progress towards reunification." The father only points to circumstances existing at the time of the termination hearing. He has not provided us with an enumeration of "the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *See id.* § 232.104(2)(b). It is not our role to advocate what potential circumstances would warrant an extension on the father's behalf, and we decline to do so. *See, e.g.*, *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974). So we decline the father's request for an extension, and we affirm the termination of his parental rights.

## IV. Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**